UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANGELA O.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 4:21cv52 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

      Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

      In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since August 24, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; levoscoliosis; obesity; osteoarthritis of the feet; heel spur of the left foot (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift, carry, push, and/or pull up to 20 pounds occasionally and 10 pounds frequently. The claimant can stand/walk and sit for 6 hours of an eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant should have no concentrated exposure to hazards (dangerous moving machinery and unprotected heights).

6. The claimant is capable of performing past relevant work as a housekeeper (DOT #323.687-014/SVP 2/Light per the DOT, Medium as performed). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 24, 2016, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 12-19).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on January 26, 2022. On April 6, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 3, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

3

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 4 was the determinative inquiry.

Plaintiff alleges that she suffers from scoliosis, degenerative disc disease, and neuropathy in her feet. On July 26, 2018, an x-ray of Plaintiff's lumbar spine revealed severe narrowing of the intervertebral disc spaces at L4-5 and L5-S1 with facet osteoarthropathy from L3-4 through L5-S1. (Tr. 511). The final impression was levoscoliosis with advanced degenerative changes of the lower lumbar spine. *Id*.

Dr. Thaper completed a Residual Functional Capacity Form on September 10, 2018, indicating that she had seen Plaintiff every 2 to 4 months for about 5 years for her lumbar disc disorder. (Tr. 512). She described the prognosis as fair and chronic. She described Plaintiff's symptoms as muscle spasms in the left hip and lower back with pain and discomfort, and

4

throbbing pain in the bilateral feet. She noted chronic pain in the low back and feet that rated as a 7/10. *Id*. She further indicated that depression contributes to Plaintiff's pain, and her attention and concentration are affected. Dr. Thaper opined that Plaintiff could walk about 3 blocks, sit for about 45 minutes, and stand about 30 minutes. (Tr. 514). In an eight-hour workday, she concluded that Plaintiff was limited to sitting a total of 4 hours and standing and walking less than 2 hours. (Tr. 515). Dr. Thaper also indicated that Plaintiff could lift less than 10 pounds occasionally, and that she would likely miss two days of work per month. (Tr. 516).

On September 10, 2018, Plaintiff's exam noted obesity, moderate pain with range of motion of the lumbar spine, tenderness to palpation in the paravertebral region, pain on extension of the lumbar spine, and her bilateral feet were observed to have prominent joints with arthritic changes. (Tr. 521).

In September 2018, Plaintiff was seen by Dr. Keyes of Kokomo Foot and Ankle Center. (Tr. 566). Plaintiff reported bilateral nerve damage in the tops of the feet and arthritis that had improved since she stopped working and was off her feet more. *Id*. X-rays of the feet revealed non-uniform narrowing with degenerative changes to the anterior ankle joints consistent with osteoarthritis and heel spurs. (Tr. 567). A nerve conduction study was ordered.

The EMG of September 26, 2018, revealed results consistent with bilateral superficial peroneal sensory neuropathies. The doctor further noted, "Although the abnormalities identified can be seen in the normal population, these findings would be highly suggestive that her symptoms are related to possible previous trauma involving the superficial peroneal nerves on the dorsum of both feet." (Tr. 570). The exam that day showed questionable hyperesthesia involving the superficial peroneal nerve. (Tr. 569).

On exam in October 2018 and January 2019, Plaintiff reported her depression was fairly controlled, but functioning was somewhat difficult. (Tr. 602, 612). She presented as anxious with fearful thoughts, depressed mood, excessive worry, fatigue and restlessness. *Id*. She was diagnosed with moderate episode of recurrent major depressive disorder, chronic. (Tr. 616). Her evaluation in April 2019 was largely unchanged. (Tr. 617-622).

On October 8, 2020, NP Thompson wrote a letter indicating that Plaintiff was under her medical care and due to her advanced degenerative disc disease and levoscoliosis, was unable to perform daily job duties. (Tr. 653). NP Thompson further wrote, "She has difficulty standing or setting [sic] for prolonged periods of time and has chronic pain due to her spinal deformities." *Id*.

On September 30, 2020, NP Thompson noted worsening back pain and added Flexeril in the evening for muscle pain and spasm. (Tr. 660). Plaintiff was also diagnosed with cataracts in both eyes. (Tr. 667).

At the hearing before the ALJ, Plaintiff testified that she lives with her husband, who is employed. (Tr. 44). She stated that she is about 5 feet, 6 inches tall and weighs 195 pounds. (Tr. 45). She estimated that she could stand for about 20-30 minutes and walk about 500 feet or half a mile. (Tr. 47). She said that she can grocery shop with her husband for short periods, where she leans on the cart to relieve pain and tension in her back. (Tr. 47-48). She testified that if she walks too long, her knees will start to buckle because of pain shooting down her legs and then into her feet. *Id*. She testified to doing home exercises two to three times per week as per her doctor's instruction. (Tr. 48). She stated that her medication made her a bit drowsy, requiring a nap in the afternoons. (Tr. 49). Plaintiff testified to doing household chores like dishes and laundry but taking breaks in order to complete them. (Tr. 50). She also indicated that bathing and dressing

6

require more time than before. (Tr. 51). Plaintiff stated that she has a handicap parking placard because walking across a parking lot affects her back and feet. (Tr. 51).

Plaintiff testified that she used to garden, rake leaves, and paint, but has become unable to do these activities due to her back. (Tr. 52). She indicated that she is on a medication for depression which controls it most days, but she still has days where it is not controlled. (Tr. 52). When her depression is not controlled, she will cry or go two or three days without showering and will let the household chores fall behind. (Tr. 53). Plaintiff testified that she has uncontrolled depression about two-three times a month. *Id*.

In response to the ALJ's hypothetical, the vocational expert testified that Plaintiff's past work as housekeeper could be performed as generally performed, but not as actually performed. (Tr. 55). The vocational expert further testified that a person with Plaintiff's RFC could also perform the occupations of information clerk, office helper, and merchandise marker. (Tr. 56-57). The vocational expert also testified that employers will not tolerate absenteeism beyond one full day per month or no more than two portions of a workday, such as coming in late or leaving early. (Tr. 56). Finally, the vocational expert testified that employers will only tolerate a worker to be off task 15% of the day, outside of normal breaks. *Id*. On cross exam, the vocational expert testified that Plaintiff could perform no work that required reaching in all directions; also, handling, fingering and feeling were all limited to occasional. (Tr. 64).

In support of remand, Plaintiff first argues that the ALJ erred in failing to find Plaintiff's neuropathy of the feet a severe impairment. Plaintiff points out that an EMG of her feet on September 26, 2018, revealed results consistent with bilateral superficial peroneal sensory neuropathies. The doctor further noted, "Although the abnormalities identified can be seen in the

normal population, these findings would be highly suggestive that her symptoms are related to possible previous trauma involving the superficial peroneal nerves on the dorsum of both feet." (Tr. 570). Plaintiff contends that the ALJ misconstrued the EMG results by stating, "During the previously adjudicated period, the claimant had an EMG/NCS of the lower extremities that showed bilateral superficial peroneal sensory neuropathies. However, as that report states, the abnormalities identified can be seen in the normal population. (Exhibit B12F/66-67)." (Tr. 13). The ALJ failed to recognize the EMG results as objective evidence that is the basis for Plaintiff's reports of pain and neuropathy. While this test was done prior to the time period under adjudication, all of Plaintiff's conditions and the evidence of those conditions must be fairly considered. As Plaintiff notes, there is no evidence or opinions in the file that her neuropathy has improved.

  The ALJ also stated that "the claimant's foot examinations have been entirely normal during the period at issue. (*see e.g.* Exhibit B12F/49; B14F/5-6)." (Tr. 13). However, the exam conducted the day of the EMG showed questionable hyperesthesia involving the superficial peroneal nerve. (Tr. 569). On September 10, 2018, Plaintiff's exam noted the bilateral feet were observed to have prominent joints with arthritic changes. (Tr. 521). Neither of these observations were noted in the ALJ's decision. An ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir.2010); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). ("[W]e cannot uphold a decision by an administrative agency . . . if . . . the reasons given . . . do not build an accurate and logical bridge between the evidence and the result.). An ALJ may not select and discuss only that evidence that favors his ultimate conclusion. *Diaz v. Chater*, 55 F.3d

300, 307 (7th Cir. 1995).

Additionally, on October 8, 2020, NP Thompson wrote a letter indicating that Plaintiff was under her medical care and unable to perform daily job duties in part due to difficulty standing for prolonged periods of time. (Tr. 653). "An ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018); citing *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010).

The EMG, clinical observations, Plaintiff's testimony, and the statement of NP Thompson all support a finding of severe neuropathy in the bilateral feet. An impairment is non-severe only when the impairment is so slight that it has no more than a *de-minimis* effect on the ability to perform basic work activities. Social Security Ruling 85-28. Furthermore, when resolution of the issue is unclear, ALJs are to go to the next step of evaluation. "An impairment is not severe if it does not significantly limit your physical or mental abilities to do basic work activities." 20 C.F.R. 404.1521(a) and 416.921(a).

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. 20 C.F.R. § 404.1545(a)(1); *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Here, the ALJ has failed to build the "accurate and logical bridge from the evidence to his conclusion so that [a reviewing court] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ has not sufficiently connected the dots between Plaintiff's impairments and the RFC finding. *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).

The Commissioner contends that the ALJ provided an adequate discussion and consideration of Plaintiff's feet neuropathy. The Commissioner also argues that even if the neuropathy was considered severe, the ALJ considered and accounted for neuropathy in the RFC when he stated that "[t]hese limitations also accommodate the claimant's bilateral superficial peroneal sensory neuropathies." (Tr. 17). However, the simple announcement by the ALJ that he had fully considered and accommodated the neuropathy, along with arthritis of the feet, without any supporting rationale, does not meet the standard of review. There is no logic or explanation in the decision, rendering it unsupported by substantial evidence. This is especially true given the fact that the ALJ did not even mention or discuss important medical findings, discussed above, that support a more limited RFC. Meaningful review is not possible absent discussion of vital evidence. Thus, remand is required on this issue.

Next, Plaintiff argues that the ALJ improperly weighed the treating source opinion, and also erred in considering Plaintiff's testimony. Plaintiff's primary care provider, NP Thompson, managed most of her chronic conditions. As noted above, on September 30, 2020, NP Thompson noted Plaintiff's worsening back pain and added Flexeril in the evening for muscle pain and spasm. (Tr. 660). Plaintiff was also diagnosed with cataracts in both eyes. (Tr. 667). On October 8, 2020, NP Thompson wrote a letter indicating that Plaintiff was under her medical care and due to her advanced degenerative disc disease and levoscoliosis, she is unable to perform daily job duties. (Tr. 653). NP Thompson further wrote, "[Plaintiff] has difficulty standing or setting [sic] for prolonged periods of time and has chronic pain due to her spinal deformities." *Id*.

In assessing this statement, the ALJ stated, "The undersigned finds this opinion unpersuasive. Firstly, as stated above, there is a lack of observations from treating/examining

sources supporting the claimant is unable to stand/walk as required in light work. Secondly, the opinion is vague and in part addresses the ultimate issue reserved to the Commissioner. Additionally, at the same visit at which this opinion was generated (B14F/1-8), the claimant's exam was entirely normal other than obesity." (Tr. 17).

The ALJ stated his reasons for rejecting Plaintiff's testimony about her limited ability to stand and walk:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, the claimant generally contends frequent position changes and the inability be on her feet for prolonged periods make her unable to sustain employment. While the record recognizes limitations due to these impairments, the degree of functional limitations alleged by the claimant is inconsistent with the medical evidence of record. As noted above, diagnostic images have shown lumbar spine defects as well as osteoarthritis in the feet and a heel spur. Unfortunately, there are minimal observations from treating/examining sources supporting disabling limitations in mobility, strength, and ambulation.

(Tr. 17).

The ALJ repeatedly states that Plaintiff's exams are normal, and this appears to be the basis for his rejection of NP Thompson's opinion as well as Plaintiff's testimony about her limitations. However, the ALJ is making an impermissible leap about what findings there should be on exam. The ALJ lays no medical foundation for the expectation that neuropathy should result in clinical observations during a short medical exam. Plaintiff has never claimed that she is unable to stand and walk sufficiently to attend a doctor visit. She testified that she could perform household tasks, but only with breaks due to increasing pain. Plaintiff's treating doctors have not asked her to attend physical therapy or undertake a functional capacity evaluation where her activity can be monitored over several hours.

Plaintiff contends that there is no rational basis for the ALJ to disbelieve Plaintiff's

statements about limited standing and walking. She has x-rays showing advanced degenerative disc disease. She also has an EMG documenting neuropathy. The Seventh Circuit, in *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012), stated that "[t]he ALJ has not cited any activities inconsistent with her testimony regarding limitations. The failure to recognize [the] differences [between activities of daily living and activities of a full-time job] is a recurrent ... feature of opinions by administrative law judges in social security disability cases."

Plaintiff points out that a fair and accurate assessment of her limitations regarding standing and walking is crucial, as with her age and work history, a sedentary RFC would have led to a finding of disabled under the Medical Vocational Guidelines.

Plaintiff further argues that the ALJ committed legal error by rejecting NP Thompson's opinion as to disability. The ALJ held that the opinion touched on an issue reserved to the Commissioner. While it is true that opinions on issues reserved to the Commissioner are not entitled to "special significance" or "controlling weight,' this does not mean they are improper and therefore to be ignored. *Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012); *see also Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir.2013) ("Although the ALJ does 'not give any special significance' to such opinions, he still must consider 'opinions from medical sources' in determining the claimant's residual functional capacity.") (quoting 20 C.F.R. § 404.1527(d)(2)-(3)); SSR 96–5p, 1996 WL 374183, at *1 (noting that treating source opinions on issues reserved to the Commissioner are "never entitled to controlling weight or special significance," but that such opinions "must never be ignored").

The ALJ also described the opinion as "vague". However, this does not relieve the ALJ of his duty to consider the medical providers' statements in light of the evidence. An opinion

regarding what a claimant can or cannot do in a given day is not a "medical opinion" to which the ALJ must defer. *Bates v. Colvin*, 736 F.3d 1093, 1102 n.4 (7th Cir. 2013). Thus, a medical source need not provide a function-by-function analysis. *Colson v. Colvin*, 120 F. Supp. 3d 778 (N.D. Ill. 2015). NP Thompson's opinion was well within her medical knowledge, as she was indicating that the medical evidence and her observations of Plaintiff lead her to conclude that she is not able to be on her feet for extended periods of time. She also confirmed that Plaintiff suffers pain from the conditions that plague her.

The ALJ cannot reject Plaintiff's testimony or that of NP Thompson by simply stating that she does not have functional deficits on exam. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain. *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Here, Plaintiff has several conditions that are likely to produce pain. The ALJ's dismissal of these complaints was not based on sound logic.

The Commissioner does not dispute that if Plaintiff had been found limited to sedentary work, the Medical Vocational Guidelines would have directed a finding of disabled. The weighing of opinions and testimony is vital here. As the medical opinions and evidence were not properly weighed and considered, remand is warranted.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: May 10, 2022.

                                             s/ William C. Lee
                                             William C. Lee, Judge
                                             United States District Court